John D. Early, SBN 166668
E-mail: earlylaw@cox.net
LAW OFFICE OF JOHN D. EARLY
15333 Culver Drive, #340-141
Irvine, California 92604
Telephone: (949) 551-2339
Facsimile: (949) 551-2339

Attorney for Defendant
TAI WANG MAK

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CHI MAK, et al., <br><br> Defendants. | No. SA CR 05-293(B)-CJC <br><br> **POSITION RE SENTENCING OF DEFENDANT TAI WANG MAK** <br><br> SENT. DATE: APRIL 21, 2008 <br> SENT TIME: 11:00 AM <br> CTRM: 9B |

Defendant Tai Wang Mak hereby submits this sentencing position.

## I.

## INTRODUCTION

Tai Mak is before the Court having pleaded guilty to conspiring with, among others, his older brother Chi Mak and his sister-in-law Rebecca Chiu, to unlawfully export defense articles. He is guilty of the offense and remorseful.

However, unlike his brother and Ms. Chiu, Tai Mak played no role in selecting what was to be unlawfully exported. Unlike his brother and Ms. Chiu, Tai Mak had no understanding of the specific military significance of what was being exported. Unlike

his brother and Ms. Chiu, Tai Mak had no access to sensitive information and never attempted to gain access to such information. In fact, unlike Chi Mak and Ms. Chiu, who spent a great deal of time considering and discussing which materials to export to China, Tai Mak was essentially ambivalent about whether he would try to export anything. A few days prior to the trip, Tai Mak told his wife that his brother had not given him anything to take back to China, and further noted: "Whether he is going to have it ready or not I don't care."

None of the foregoing is offered to suggest that Tai Mak is blameless. He did unlawfully attempt to export the material, arranged its encryption, attempted to conceal it, and lied about it. However, his role in comparison to Chi Mak, Rebecca Chiu and co-conspirators in the PRC is relevant. On the one hand were Chi Mak and Rebecca Chiu -- the ones with access to the information, who stole the information, and organized the information. They were the ones who, according to documents seized, were possibly assisting the PRC in obtaining information from a Boeing engineer. On the other side were co-conspirators in the PRC who gave directions to Chi Mak and Rebecca Chiu on what information to obtain, and who had the ability to understand and use the information. In the middle was Tai Mak. He was the courier, encrypting and preparing to deliver materials provided by his elder brother and his wife to his brother's colleague in the PRC-- a person who, in addition to whatever other duties he had in the PRC, was caring for Tai Mak's sick and elderly mother-in-law.

Tai Mak is guilty of conspiring to unlawfully export defense materials. He stands before the Court to be sentenced. For the reasons set forth below, Tai Mak respectfully submits that a sentence of 37 months imprisonment would be a reasonable sentence in this case and would be sufficient, but not greater than necessary, to comply with the requirements of 18 U.S.C. Section 3553 (a)(2

## II.

## OBJECTIONS TO PSR

Tai Mak objects to the following portions of the PSR:

1. Para. 24: "During a coded conversation, Tai Mak said he was from 'Red Flower of North America,' a cover story intended to mask where he was actually from. Tai Mak further advised that he would be traveling with his wife and an 'assistant,' a reference to the information he would be bringing to Mr. Pu in China."

First, Tai Mak objects to the reference to the term "Red Flower." The objection is not material to the calculation of the sentence, and rather than belabor the point, Mr. Tai Mak incorporates the evidence offered by the defense during the trial of Chi Mak without further argument. However, regardless of whether the words are interpreted as "Red Flower" or "Wang [Mr. Mak's middle name] Prosperity" of North America, the characterization of the words as a "cover story to mask where he was from" is not supported. The call was made from Tai Mak's own telephone, registered in his name, with bills going to his home address -- inconsistent with a claim he was trying to mask who he was. Further, right at the beginning of the call, he identified himself as "Mr. Mak" – again, an odd choice if he were trying to disguise who he was or where he was calling from, and the other person also referred to him openly as Mr. Mak. In addition, Tai Mak referred by name to the person he was calling, all inconsistent with someone trying to mask anything.

Second, Tai Mak objects to the statement that he said he would be traveling "with his wife and an 'assistant,' a reference to the information he would be bringing to Mr. Pu in China." What Mr. Mak told Mr. Pu was: "I'll be with my assistant." He never referred to travelling with anyone else. As it is undisputed that he was traveling with his wife, it is clear Mr. Mak was referring to his wife as his "assistant." He certainly never said he was travelling with "with his wife and an assistant." The view

3

is bolstered by the fact that this call took place on October 18, 2005, and two days later, on October 20, 2005, Tai Mak made clear that he had not received anything from Chi Mak – and did not know if he would receive anything from him. Thus, he would not tell someone, in code or otherwise, that he was bringing material if he did not then know whether he would or would not.

      2.     Para. 26, last sentence: "Chi Mak asked Tai Mak if there was any 'typhoon' in China, a reference to there being any sign of trouble."

Although not material to the calculation of the sentence, Tai Mak objects to the interpretation of this sentence. The comment was made during a conversation about the weather, and there is nothing to indicate it was code for anything. The reference was part of a lengthy call where numerous travel-related topics were discussed.

      3.     Para. 31, last sentence: "During the conversation on the drive to the airport, Tai Mak described Chi Mak as being nervous about the encrypted information on the disks."

Tai Mak understands that this recording was also subject to a dispute at the trial of Chi Mak. Again, rather than belabor the point, as the objection is not material to the calculation of the sentence, Tai Mak notes that the government's translation of the recording reads:

    Tai Mak:    Eldest brother often brings … [Unintelligible]  [20:57:29]

    [Time 21:16:21]

    Tai Mak: Encryption … [UI], maybe a little bit scared about it.

Thus, the reference to "Eldest brother" and encryption/scared is separated by almost 20 minutes. However, the objection is not material.

      4.     Paras. 47, 49 and 51. In these paragraphs, the Probation Office concludes that Tai Mak is the next-most culpable defendant after Chi Mak, followed by Rebecca Chiu, and concludes that Tai Mak deserves a role enhancement as a manager or supervisor of the offense.

Tai Mak objects to the determination of relative culpability, respectfully submitting that Rebecca Chiu is more culpable than Tai Mak, based upon, inter alia:  (i) as reflected in recordings and videos of Chi Mak's house, Rebecca Chiu took an active role with Chi Mak in selecting which materials were to be sent to China, commenting variously upon the level of export restriction as well as the substantive nature of the material (matters over which Tai Mak had no control over or involvement in); (ii) Rebecca Chiu selected the items fully understanding their significance, being able to read and understand them as an educated and trained engineer; (iii) Rebecca Chiu herself took steps to attempt to gain access to technology, applying to join the Institute of Electrical and Electronics Engineers; (iv) Rebecca Chiu was fully aware of the specific export control laws covering the materials, once going to the trouble to hand-write export control warnings in English for her own edification, including references to specific statutes and regulations; and (v) Rebecca Chiu apparently was asked to hand-carry a letter written by a Chinese government official to a former Boeing engineer after she had a "chat" with the official about the "situation" involving the Boeing engineer.

### III.
### TAI MAK DOES NOT HAVE A TECHNOLOGICAL BACKGROUND

Tai Mak was born in 1949 in Hong Kong.  When he was a child, his mother brought him and his siblings to the PRC.  Chi Mak, nine years Tai's senior, graduated from college in the PRC and immigrated to Hong Kong in 1965.  In 1966, after Chi had departed, when Tai Mak was about 17 years old, Mao's "Cultural Revolution" began in China.  Among the ill-conceived initiatives of the Cultural Revolution, the government closed schools and universities across the country.  One of the legacies of the Cultural Revolution was that from roughly 1966-1976, higher education was not available for Chinese youth.  As a result, unlike Chi Mak and Rebecca Chiu, Tai Mak never attended college nor did he obtain any advanced degrees.

IV.

## THE CONCEPTS OF *LI* AND *GUANXI*

The concept of *Li* is core to Chinese society. Although difficult to translate precisely, it is a Confucian concept relating to propriety and virtue in society. One element of *Li* is the imposition of strict hierarchical relationships in society, starting with the family. Parents always "outrank" children, and older siblings "outrank" younger siblings – even in the relations between twins, the one born second will forever defer to the one born first. Such hierarchical relations are parroted in all forms of social settings and are a powerful force in society. Particularly after the death of the family's father, a younger brother would be expected to show respect and defer to an older brother. Intercepted telephone calls in this case show Tai Mak often referring to Chi not by his name, but by the term of respect "elder brother."

Another Chinese concept holding strong significance in understanding social conduct is *guanxi* – personal relationships between people typified by an unstated understanding that a favor done by one person would need to be returned (in roughly equal measure) by the person for whom the favor is done. The concept is a powerful force in China, one that foreign businesses struggle to understand. It relates not just to the doing of business, but to everyday relationships between people. Intercepted telephone calls reveal that "Mr. Pu," the person to whom Chi Mak was sending the materials, was taking care of Tai Mak's elderly mother-in-law in China.

For Tai Mak to have refused a request by his older brother, or to refuse a request by someone to whom he owes favors, would have gone against the powerful concepts of *li* and *guanxi*. Of course, the government's view is that Tai Mak had other reasons for doing what he did. With or without those other reasons, there were compelling sociological and familial reasons why Tai Mak would have difficulty turning down a request by his elder brother to deliver materials to Mr. Pu.

In fact, in Tai Mak's conversation with his wife on October 20, 2005, a few days before the scheduled departure to China, hints at Tai's situation. Tai discussed the fact that Chi had not given him the disc, saying:

> "I'm not going to bother with it. Today is Thursday and tomorrow is Friday. I'll give him another phone call and it is done. I'll call him again next Monday. I'll be leaving next Friday. Whether he is going to have it ready or not I don't care."

Thus, although Tai Mak feels he cannot refuse his brother, he has no independent desire to do his brother's bidding.

## V.
## ROLE IN THE OFFENSE

Tai Mak recognizes that his offense is a serious one, and by this argument does not intend to marginalize or minimize his conduct. However, considering all of the circumstances, he respectfully submits that a role enhancement is not warranted here.

The role enhancement for a "manager" or "supervisor" of a criminal activity under U.S.S.G. § 3B1.1(b) suggested by the PSR is based upon two things: (1) Tai Mak's asking his son to help encrypt the disc and (2) Tai Mak's packing the disc in his wife's suitcase. With respect to his wife, there is nothing in the PSR that indicates Tai Mak directed her to do anything. Indeed, he secreted the disc in her luggage, but he did not "supervise" her actions. With respect to his son, Tai Mak did, to his eternal regret, ask his son to help him encrypt the disc. However, it was not the demand of a supervisor requiring a subordinate to perform a criminal task. He did not "supervise" or "manage" Billy as those terms are normally understood.

There is no doubt that Tai Mak is more culpable than Billy Mak or Fuk Li, who deservedly received 4-level role reductions for their minimal participation. However, looking at the crime in its totality, others (Chi Mak, Rebecca Chiu and individuals in China) controlled and managed the essence of the operation. Chi Mak and Rebecca

7

selected the technology to export, perhaps with guidance from their contacts in China. Individuals in China presumably intended to make use of the technology. Tai Mak was courier. On one side was his older brother. On the other was the person caring for his wife's octogenarian mother. In the middle was Tai Mak, who, while not blameless, was not the instigator. To the contrary, in words that sting with hindsight, as he said to his wife shortly before the trip, whether or not Chi gave him something to deliver, "I don't care." Obviously, he should have.

The role enhancement provision "is included primarily because of concerns about relative responsibility." U.S.S.G. § 3B1.1 (Background). Tai Mak respectfully submits that, compared to Chi Mak, Rebecca Chiu and those involved in the PRC, he is less culpable, and did not exercise true supervisory or managerial control over the operation. A role enhancement is not warranted; to the contrary, Tai Mak submits that, under Section 3B1.2, he is "less culpable than most other participants" and thus should receive a role reduction of two levels. U.S.S.G. § 3B1.2, App. Note 5.

## VI.

## CONCLUSION

Based upon the foregoing, defendant Tai Wang Mak respectfully requests that the Court calculate his sentence as follows:

The PSR calculates the net offense level as follows:

| | | |
|---|---|---|
| Base Offense Level: | 26 | (U.S.S.G. § 2M5.2(a)(1)) |
| Acceptance of Responsibility: | - 3 | (U.S.S.G. § 3E1.1(a)(b)) |
| Minor Role: | - 2 | (U.S.S.G. § 3B1.2(b)) |
| TOTAL OFFENSE LEVEL: | 21 | |

The resulting sentencing range for an offense level of 21 and a criminal history category of I is 37-46 months. Defendant respectfully submits that considering his role

in the offense and relative culpability of others involved, a sentence of 37 months imprisonment is reasonable and is sufficient, but not greater than necessary, to satisfy the requirements of 18 U.S.C. § 3553(a)(2).

DATED:  April 7, 2008               LAW OFFICE OF JOHN D. EARLY


                                    By _____
                                       JOHN D. EARLY
                                       Counsel for Defendant
                                       TAI WANG MAK