## United States District Court
## Central District of California

UNITED STATES OF AMERICA vs.      Docket No.    <u>SACR 05-00293(B)-CJC</u>

Defendant    <u>Tai Wang Mak</u>

akas:   <u>Taihong Mak, Daihong Mak, Dahong Mai</u>

Social Security No. <u>6</u>   <u>7</u>   <u>7</u>   <u>5</u>
(Last 4 digits)

### JUDGMENT AND PROBATION/COMMITMENT ORDER

In the presence of the attorney for the government, the defendant appeared in person on this date.

| MONTH | DAY | YEAR |
|-------|-----|------|
| 04 | 21 | 2008 |

**COUNSEL**   [X] WITH COUNSEL      John D. Early, Apptd.
(Name of Counsel)

**PLEA**   [X] GUILTY, and the court being satisfied that there is a factual basis for the plea.   [ ] NOLO CONTENDERE   [ ] NOT GUILTY

**FINDING**   There being a finding/verdict of [X] GUILTY, defendant has been convicted as charged of the offense(s) of:
Conspiracy to Export Defense Articles in violation of 22 U.S.C. § 2778(b)(2),(c) as charged in Count 1 of the Second Superseding Indictment.

**JUDGMENT AND PROB/ COMM ORDER**   The Court asked whether defendant had anything to say why judgment should not be pronounced. Because no sufficient cause to the contrary was shown, or appeared to the Court, the Court adjudged the defendant guilty as charged and convicted and ordered that:

The defendant shall pay to the United States a special assessment of $100, which is due immediately.

All fines are waived as it is found that the defendant does not have the ability to pay a fine.

The defendant shall comply with General Order 01-05.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Tai Wang Mak, is hereby committed on Count 1 of the Second Superseding Indictment to the custody of the Bureau of Prisons to be imprisoned for a term of 120 months.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years under the following terms and conditions:

1. The defendant shall comply with the rules and regulations of the U.S. Probation Office and General Order 318;

2. The defendant shall cooperate in the collection of a DNA sample from his person;

3. During the period of community supervision the defendant shall pay the special assessment in accordance with this judgment's orders pertaining to such payment; and

4. The defendant shall comply with the immigration rules and regulations of the United States, and if deported from this country, either voluntarily or involuntarily, not reenter the country illegally. The defendant is not required to report to the Probation Office while residing outside of the United States; however, within 72 hours of any reentry to the

USA vs.  TAI WANG MAK           Docket No.:    SACR 05-00293(B)-CJC

United States during the period of Court-ordered supervision, the defendant shall report for instructions to the United States Probation Office, located at 411 West Fourth Street, Suite 4170, Santa Ana, California, 92701.

The drug testing condition mandated by statute is suspended based on the Court's determination that the defendant poses a low risk of future substance abuse.

Defendant advised of his right to appeal.

Upon the government's motion, the remaining Indictment, First Superseding Indictment and Second Superseding Indictment are dismissed as to this defendant only.

In addition to the special conditions of supervision imposed above, it is hereby ordered that the Standard Conditions of Probation and Supervised Release within this judgment be imposed.  The Court may change the conditions of supervision, reduce or extend the period of supervision, and at any time during the supervision period or within the maximum period permitted by law, may issue a warrant and revoke supervision for a violation occurring during the supervision period.

_April 21, 2008_
Date

_____
U. S. District Judge

It is ordered that the Clerk deliver a copy of this Judgment and Probation/Commitment Order to the U.S. Marshal or other qualified officer.

Sherri R. Carter, Clerk

_APRIL 21, 2008_
Filed Date

By _____
**MICHELLE URIE**
Deputy Clerk

USA vs.   TAI WANG MAK                                      Docket No.:    SACR 05-00293(B)-CJC

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below).

## STANDARD CONDITIONS OF PROBATION AND SUPERVISED RELEASE

While the defendant is on probation or supervised release pursuant to this judgment:

1. The defendant shall not commit another Federal, state or local crime;
2. the defendant shall not leave the judicial district without the written permission of the court or probation officer;
3. the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
4. the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
5. the defendant shall support his or her dependents and meet other family responsibilities;
6. the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
7. the defendant shall notify the probation officer at least 10 days prior to any change in residence or employment;
8. the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
9. the defendant shall not frequent places where controlled substances are illegally sold, used, distributed or administered;
10. the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
11. the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
12. the defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
13. the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
14. as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to conform the defendant's compliance with such notification requirement;
15. the defendant shall, upon release from any period of custody, report to the probation officer within 72 hours;
16. and, for felony cases only: not possess a firearm, destructive device, or any other dangerous weapon.

[X]   The defendant will also comply with the following special conditions pursuant to General Order 01-05 (set forth below).

## STATUTORY PROVISIONS PERTAINING TO PAYMENT AND COLLECTION OF FINANCIAL SANCTIONS

The defendant shall pay interest on a fine or restitution of more than $2,500, unless the court waives interest or unless the fine or restitution is paid in full before the fifteenth (15th) day after the date of the judgment pursuant to 18 U.S.C. §3612(f)(1). Payments may be subject to penalties for default and delinquency pursuant to 18 U.S.C. §3612(g). Interest and penalties pertaining to restitution , however, are not applicable for offenses completed prior to April 24, 1996.

If all or any portion of a fine or restitution ordered remains unpaid after the termination of supervision, the defendant shall pay the balance as directed by the United States Attorney's Office. 18 U.S.C. §3613.

The defendant shall notify the United States Attorney within thirty (30) days of any change in the defendant's mailing address or residence until all fines, restitution, costs, and special assessments are paid in full. 18 U.S.C. §3612(b)(1)(F).

The defendant shall notify the Court through the Probation Office, and notify the United States Attorney of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay a fine or restitution, as required by 18 U.S.C. §3664(k). The Court may also accept such notification from the government or the victim, and may, on its own motion or that of a party or the victim, adjust the manner of payment of a fine or restitution-pursuant to 18 U.S.C. §3664(k). See also 18 U.S.C. §3572(d)(3) and for probation 18 U.S.C. §3563(a)(7).

Payments shall be applied in the following order:

1. Special assessments pursuant to 18 U.S.C. §3013;
2. Restitution, in this sequence:
   Private victims (individual and corporate),
   Providers of compensation to private victims,
   The United States as victim;
3. Fine;
4. Community restitution, pursuant to 18 U.S.C. §3663(c); and
5. Other penalties and costs.

USA vs.   TAI WANG MAK                                Docket No.:   SACR 05-00293(B)-CJC

## SPECIAL CONDITIONS FOR PROBATION AND SUPERVISED RELEASE

As directed by the Probation Officer, the defendant shall provide to the Probation Officer: (1) a signed release authorizing credit report inquiries; (2) federal and state income tax returns or a signed release authorizing their disclosure and (3) an accurate financial statement, with supporting documentation as to all assets, income and expenses of the defendant.  In addition, the defendant shall not apply for any loan or open any line of credit without prior approval of the Probation Officer.

The defendant shall maintain one personal checking account.  All of defendant's income, "monetary gains," or other pecuniary proceeds shall be deposited into this account, which shall be used for payment of all personal expenses.  Records of all other bank accounts, including any business accounts, shall be disclosed to the Probation Officer upon request.

The defendant shall not transfer, sell, give away, or otherwise convey any asset with a fair market value in excess of $500 without approval of the Probation Officer until all financial obligations imposed by the Court have been satisfied in full.

These conditions are in addition to any other conditions imposed by this judgment.

## RETURN

I have executed the within Judgment and Commitment as follows:

Defendant delivered on _____ to _____

Defendant noted on appeal on _____

Defendant released on _____

Mandate issued on _____

Defendant's appeal determined on _____

Defendant delivered on _____ to _____

at _____

the institution designated by the Bureau of Prisons, with a certified copy of the within Judgment and Commitment.

United States Marshal

_____                    By _____
Date                                                                       Deputy Marshal

USA vs.   TAI WANG MAK                          Docket No.:   SACR 05-00293(B)-CJC

**CERTIFICATE**

I hereby attest and certify this date that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

Clerk, U.S. District Court

By _____

_____          _____
Filed Date                           Deputy Clerk

**FOR U.S. PROBATION OFFICE USE ONLY**

Upon a finding of violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)_____          _____
                Defendant                                    Date


_____          _____
        U. S. Probation Officer/Designated Witness              Date

FILED · SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

MAR 2 4 2008

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: SACR 05-293-CJC |
| Plaintiff, | STATEMENT OF REASONS |
| vs. | |
| CHI MAK, et al., | |
| Defendant | |

## I.    INTRODUCTION

Defendant Chi Mak led a conspiracy to pass sensitive naval technology to the People's Republic of China (the "PRC"). In his public life, Mr. Mak appeared to be an upstanding American citizen who helped to develop sensitive technology for the United States Navy. Privately, however, Mr. Mak served as a covert agent of the PRC, using his employment position and security clearance in an effort to pass sensitive naval technology to the PRC. On May 10, 2007, Mr. Mak was convicted by a jury on five different counts: conspiracy to export defense articles in violation of 22 U.S.C. §§ 2778(b)(2) and (c), 22 C.F.R. §§ 127.1(a)(3) and 127.3 (count 1); attempted export of defense articles in violation of 22 U.S.C. §§ 2778(b)(2) and (c), 22 C.F.R. §§

1   127.1(a)(1) and 127.3 (counts 2 and 3); acting as an unregistered agent of a foreign

2   government in violation of 18 U.S.C. § 951 (count 6); and making a false statement in

3   violation of 18 U.S.C. § 1001 (count 11).  Having fully considered the applicable

4   advisory guideline sentencing range and sentencing factors contained in 18 U.S.C. §

5   3553(a), the Court hereby imposes a custodial sentence of 293 months, a sentence at the

6   high end of the advisory guideline sentencing range.  A high-end advisory guideline

7   sentence is a just and fair punishment.  Mr. Mak betrayed the United States.  We

8   entrusted him with our national security and the safety of our courageous men and

9   women in the armed forces.  He betrayed that sacred trust by being an agent of the PRC

10  and attempting to pass sensitive naval technology to that country.  To make matters

11  worse, Mr. Mak lied to avoid prosecution and conviction.  We will never know the full

12  extent of the damage that Mr. Mak has done to our national security.  A high-end

13  advisory guideline sentence will provide a strong deterrent to the PRC not to send its

14  agents here to steal American military secrets, and it will ensure that Mr. Mak will

15  never attempt to pass any of our military secrets to the PRC again.

16

17  **II.    CALCULATION OF THE GUIDELINE RANGE**

18

19      **A. Base Offense Level**

20

21      "The district courts, while not bound to apply the Guidelines, must consult those

22  Guidelines and take them into account when sentencing."  *United States v. Booker*, 543

23  U.S. 220, 264 (2005).  Thus, when imposing any sentence, the first step for a district

24  court is to calculate the applicable advisory guideline range.  *See United States v.*

25  *Mohamed*, 459 F.3d 979, 985 (9th Cir. 2006).  Pursuant to the Relevant Conduct

26  advisory guideline, Mr. Mak is accountable for all acts that he committed, aided, or

27  abetted and, in the case of a jointly undertaken criminal activity, all reasonably

28  foreseeable acts committed by others in furtherance of the jointly undertaken criminal

1  activity.  *See* U.S.S.G. § 1B1.3(a)(1).  All five counts on which Mr. Mak was convicted

2  are grouped together because they involve the same victim, the United States, and are

3  tied together by two or more acts connected by a common criminal objective, that is, a

4  conspiracy to export defense articles to the PRC.  *See* U.S.S.G § 3D1.2(b).  When

5  counts are grouped together pursuant to Section 3D1.2(b), the offense level is

6  determined using the advisory guideline that results in the highest offense level.

7  U.S.S.G. § 3D1.3(a).  In this case, Count 6, acting as an unregistered agent of a foreign

8  government, has the highest base offense level.  Accordingly, the advisory guideline

9  base offense level for Count 6 is used to determine the offense level.  That base offense

10  level is 30.  *See* U.S.S.G. § 2M3.2(a)(2).

## B. Enhancements

The Court must determine whether any adjustments or departures under the
Guidelines should be applied to the base offense level.  The Court believes three
enhancements under the Guidelines apply here.  Specifically, a four-level enhancement
is warranted for Mr. Mak's aggravating role in the offense, a two-level enhancement is
warranted for his abuse of a position of public or private trust, and a two-level
enhancement is warranted for obstructing justice.

## 1. Role in Offense

To qualify for an aggravating role adjustment, the defendant must have been the
organizer, leader, manager, or supervisor of one or more other participants.  *See*
U.S.S.G. §§ 3B1.1, 3B1.2.  Mr. Mak is the most culpable defendant in the conspiracy to
pass export-controlled material to the PRC because he was the organizer and leader of
the offense.  Mr. Mak is the only defendant in this case who had access to the
information sought by the PRC, which he obtained by virtue of a security clearance and

due to his position at Power Paragon, Inc. ("Power Paragon") as a senior engineer.  In his role as leader of the conspiracy, Mr. Mak communicated with a contact in the PRC known as "Little Gu," received tasking lists from the PRC that enumerated the types of technologies that he was to obtain, collected the information, and selected which material to send to the PRC.  Mr. Mak enlisted the help of his wife, brother, sister-in-law, and nephew to copy the information onto CD-Rom disks, encrypt the information and conceal its packaging, and transport the concealed information to the PRC.  Mr. Mak admitted during his post-arrest interview with government agents on October 30, 2005, that it was his idea to pass the export-controlled information to the PRC, rather than that of his family members.  Because Mr. Mak's co-defendants all played secondary roles in the conspiracy, acting at his direction, Mr. Mak is properly viewed as the organizer of the crime.

The offense level is increased four levels if the defendant was an organizer of criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a).  Here, the offense involved at least five criminally responsible participants, including the five named defendants and other unindicted coconspirators in the PRC.  As a result, the base offense level is increased four levels for Mr. Mak's role in the offense.

**2. Abuse of Trust**

The offense level is increased two levels if the defendant abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense.  *See* U.S.S.G. § 3B1.3.  A "position of public or private trust" is one characterized by substantial discretionary judgment that is ordinarily given considerable deference by others.  *Id.* at Application Note 1.  Persons holding such positions ordinarily are subject to significantly less supervision than employees with

1 | non-discretionary responsibilities. *Id.* In order for this adjustment to apply, the position
2 | of trust must have contributed in some significant way to the defendant's ability to carry
3 | out the offense or to conceal it. *Id.*

4 |

5 |      In this case, Mr. Mak's security clearance and position as a senior electrical
6 | engineer at Power Paragon gave him critical access to the technology sought by the
7 | PRC, thereby providing him with the opportunity to commit the treasonous crimes. Mr.
8 | Mak used his position to provide his brother Tai Mak and his sister-in-law Fuk Li with
9 | copies of two export-controlled documents to deliver to the PRC. The documents were
10 | entitled "Solid-State and Power Switches for Source Transfer and Load Protective
11 | Functions" (the "Solid-State document") and "5 MW High Efficiency Quiet-Electric
12 | Drive Demonstrator" (the "QED document"). Although Mr. Mak was not convicted for
13 | passing military secrets to the PRC, he did admit during his post-arrest interview with
14 | government agents that he passed naval technology to the PRC over the years, such as
15 | the Electro Magnetic Aircraft Launch System for use in future Navy aircraft carriers,
16 | DC/DC Converters for Navy Submarines, the 5000 AMP DC Hybrid Breaker, the
17 | Autobus Transfer System, and the Aegis "Spy-1" Radar System. The substantial
18 | amount of technological material that Mr. Mak accessed through his work is evidenced
19 | by the fact that government agents found approximately 1000 documents in his house,
20 | which were responsive to the tasking lists he received from the PRC. Mr. Mak could
21 | not have accessed this sensitive naval technology but for the public and private trust
22 | Power Paragon and the United States placed in him. Because of Mr. Mak's position
23 | and security clearance, his colleagues and supervisors trusted and worked with him on
24 | confidential and, in some instances, classified projects. Mr. Mak's position of trust also
25 | allowed him to conceal his crimes from government officials longer than if he held a
26 | position with less discretionary judgment. For these reasons, Mr. Mak's abuse of trust
27 | merits a two-level enhancement.

28 |

1

2    **3. Obstruction of Justice**

3

4         The offense level may be increased two levels if the defendant willfully

5    attempted to obstruct the administration of justice during the investigation, prosecution,

6    or sentencing of the offense of conviction. U.S.S.G. § 3C1.1. Before a court may

7    adjust a defendant's sentence for obstruction of justice, it must find that: (1) the

8    defendant gave false testimony; (2) the testimony was on a material matter; and (3)

9    defendant had "willful intent" to provide false testimony. *United States v. Jiminez-*

10   *Ortega*, 472 F.3d 1102, 1103 (9th Cir. 2007) (*citing United States v. Dunnigan*, 507

11   U.S. 87, 94 (1993)). All three elements are met here. During trial, Mr. Mak testified

12   that he did not know that Tai Mak was going to encrypt the files that Chi Mak delivered

13   to him, which were found in Tai Mak's possession at Los Angeles International Airport.

14   Yet the transcript of Chi Mak's conversation with his wife on their drive home after

15   delivering the disks reveals that Chi Mak was aware of the planned encryption. Chi

16   Mak said that "[i]t is good that I made three CDs this morning for him/her to take to

17   Little Gu." His wife replied, "[h]e/she said that he/she still needs to work on them

18   further." Chi Mak responded, "[h]e/she has to encrypt them."

19

20        Mr. Mak also made a false statement during trial about the reason the DD(X)

21   document was found on his brother's laptop. Mr. Mak claimed that he provided Tai

22   Mak with an electronic copy of the document because he was unable to make a copy for

23   himself at Power Paragon. Testimony from various Power Paragon employees refuted

24   Mr. Mak's claim that there were not enough resources for Mr. Mak to copy the

25   document. The witnesses explained that at a huge defense contractor like Power

26   Paragon, there was never a shortage of computers, computer disks, or Information

27   Technology personnel to copy a particular document.

28

1    Additionally, Mr. Mak lied during his testimony about the reason that he and his

2    brother communicated through code word lists.  Mr. Mak claimed that his niece came

3    up with the idea to use code lists as a way of communicating about the health of Tai

4    Mak's mother-in-law, but he could not explain why it was necessary to speak in code

5    about the health of his elderly relative.

6

7    These three statements are not only false but they are material because they relate

8    to the central issues of the case—whether Mr. Mak had the intent to violate the Arms

9    Export Control Act and whether he acted as an agent of the PRC.  Additionally, Mr.

10   Mak clearly had the "willful intent" to provide false testimony based on the fact that

11   these lies were not isolated incidents or the result of confusion; Mr. Mak repeatedly

12   attempted to deceive the jury during the trial for the sole purpose of appearing less

13   culpable.  When he told these lies to the jury, his testimony was certain, not faltering,

14   and he did not appear confused, mistaken, or as if he were suffering from a faulty

15   memory.  Mr. Mak's lies during the trial were demonstrable, material, and willful.

16

17   Mr. Mak's perjury was part of a larger pattern of duplicitous conduct during

18   which Mr. Mak lied to his employer and government officials in order to further his

19   goal of exporting defense articles to the PRC.  In fact, Mr. Mak's untruths are so

20   pervasive they can fairly be characterized as a "trail of lies" used to carry out and then

21   cover up his scheme.  First, Mr. Mak lied to gain entrance to the United States and to

22   obtain the security clearance that provided him access to the naval technology at issue

23   in this case.  Specifically, he lied about his connections to the PRC in immigration

24   forms used to enter the United States, omitting information about his and his wife's

25   relatives in mainland China, which included members of the government and the

26   Communist Party.  Then he lied again about these same connections to the PRC as well

27   as the extent of his travels in that country on his application for a national security

28   clearance.

After his arrest, Mr. Mak lied to cover up the conspiracy. During his post-arrest interview with government agents, Mr. Mak falsely stated that he did not have any NOFORN documents in his home, when in fact a search of his home revealed many such documents.[1] Mr. Mak also told the agents that he did not know that his brother was traveling to Guangzhou in the PRC. Yet during a telephone call between Mr. Mak and Tai Mak nine days before their arrest, Mr. Mak specifically urged Tai Mak to travel to Guangzhou and Tai Mak agreed. When the agents questioned Mr. Mak about the tasking lists found in his trash-can, Mr. Mak claimed that the lists were ideas he had taken from magazines. This statement is belied by the fact that one of the lists was in typewritten Chinese, and Mr. Mak denied having the ability to type in Chinese characters and could not state who typed the list for him.

This pattern of deceit shows that Mr. Mak's perjury at trial was not an isolated incident or the result of mistake, but part of a "trail of lies" extending over the course of this conspiracy. Mr. Mak willfully lied to gain access to sensitive naval technology, to conceal his conduct after the fact, and to try to mitigate his role in the offense in front of the jury. Mr. Mak's perjury at trial was material since it was designed to mislead the jury on the central issues of the case—whether he was acting as an agent of the PRC and whether he intended to violate the Arms Export Control Act. Because all of the elements for the obstruction enhancement are met, a two-level enhancement is warranted.

Starting with the base offense level of 30, and adding a four-level enhancement for Mr. Mak's role in the offense, a two-level enhancement for his abuse of trust, and a

---

[1] The lies that Mr. Mak told to the government agents during his post-arrest interview are arguably not a sufficient basis for applying the obstruction of justice enhancement. *See* U.S.G.G. § 3D1.3, Application Note 4. The lies Mr. Mak told the government agents, however, certainly demonstrate that Mr. Mak acted with willful intent when he perjured himself at trial.

1    two-level enhancement for obstruction of justice, the total offense level is 38. Because

2    Mr. Mak has no prior criminal history, he has a criminal history category of I. An

3    offense level of 38 with a criminal history category of I corresponds to an advisory

4    guideline sentencing range of between 235 and 293 months.

5

6    **IV.   REASONS FOR HIGH-END SENTENCE**

7

8        Pursuant to 18 U.S.C. § 3553(a)(2), the sentence imposed needs to reflect the

9    seriousness of the offense, promote respect for the law, and provide just punishment for

10    the offense. The sentence also needs to afford adequate deterrence and protect the

11    public from further crimes of the defendant. The sentence should also provide the

12    defendant with correctional treatment in the most effective manner. A high-end

13    guideline sentence of 293 months addresses all of the relevant §3553 factors.

14

15        A high-end guideline sentence is justified based in part on the serious nature of

16    the offense and the need to protect the public from further crimes by Mr. Mak. Mr.

17    Mak organized and led a conspiracy to pass sensitive naval technology to the PRC. He

18    attempted to pass nuclear submarine power and propulsion quieting technologies, as

19    well as information about the Navy's current fleet and its future plans.[2] By passing

20    sensitive naval technology to the PRC, Mr. Mak would have enhanced the PRC's

21    military power at the expense of that of the United States. In doing so, he would have

22

23        [2] There was evidence that Mr. Mak actually provided naval secrets to the PRC. A DD(X)

24    document which contained detailed specifications about the DD(X) class destroyer was found
encrypted and deleted on Tai Mak's computer. The document was encrypted two weeks before Chi

25    Mak and his wife traveled to the PRC. There was also evidence, including Mr. Mak's own admission
to government agents, that he passed information related to the power distribution system of the Aegis

26    Spy I Radar System. The Aegis Radar System provides the U.S. with a vital technological advantage
at sea.

27

28

1   put American lives at risk.  As Admiral Hilarides testified during the trial, U.S.

2   submarine stealth technology is one of the nation's "crown jewels," because nuclear

3   submarines form the last line of defense in the event of a nuclear war.  Nuclear

4   submarines can only provide that defense if they can operate undetected, and they can

5   only operate in that manner if the stealth technology at issue is kept out of the hands of

6   potential enemies.

7

8        A high-end guideline sentence of 293 months is also necessary to protect the

9   public from future crimes by Mr. Mak.  Mr. Mak is a brilliant man who has extensive

10  knowledge of this country's naval technology, and a sentence of this length will prevent

11  him from sharing that knowledge with the PRC.  Should Mr. Mak outlive his prison

12  term, any defense information that he has retained will be outdated and obsolete.

13

14       A high-end guideline sentence of 293 months also provides adequate deterrence

15  to others who would engage in Mr. Mak's crimes.  The goal of deterrence is an

16  important factor here because of the national security concerns discussed above as well

17  as the financial impact of Mr. Mak's crimes.  The government devotes a significant

18  amount of American tax dollars to national defense.  In this case, Power Paragon's

19  portion of the first phase of the QED project alone involved more than a million dollars.

20  This spending would be for naught if foreign countries could send their agents to steal

21  American military technology with impunity.  To properly recognize both of these

22  concerns, the sentence imposed must send a strong message to those individuals who

23  have access to United States military technology and would consider betraying this

24  country.

25

26       A high-end guideline sentence of 293 months also accounts for the fact that Mr.

27  Mak's abuse of a position of trust had particularly egregious consequences for national

28  security, the extent of which will never be fully known.  The Navy conducts research at

a sub-classified level instead of at a classified level because the cost of performing all research at classified levels would be prohibitive.  As a result, the Navy relies on lesser classifications such as NOFORN, which allow for greater flexibility in performing research while still keeping military technology out of the hands of foreign governments.  The consequence of this system of classification is that the Navy must rely on the integrity and loyalty of civilian engineers like Mr. Mak working on defense projects to protect the information entrusted to them.  A high-end guideline sentence is warranted to account for Mr. Mak's betrayal of this trust through the misuse of his employment position and national security clearance.

In terms of mitigating factors, Mr. Mak argues that he is entitled to a downward departure or variance from the advisory guideline range offered by the U.S. Probation Officer based on several personal characteristics, such as his lack of criminal history, his age, and the fact that he has already lost the two things he valued most—his career and his wife, who will be deported to the PRC.  Mr. Mak also argues that he deserves a downward departure or variance because he lived a productive life developing technology for the United States and because he was well-regarded by his colleagues and neighbors.  Based on these purportedly mitigating factors, Mr. Mak argues that a sentence of ten years is appropriate.

Rather than finding that these factors merit a downward departure, the Court finds that Mr. Mak's lack of criminal history, good reputation in the community and professional accomplishments contributed to his ability to carry out and conceal his crimes over an extended period of time.  Were Mr. Mak not such a well-regarded engineer and previously upstanding citizen, the government and his employer never would have entrusted him with and given him access to sensitive naval technology.  But for his good reputation and covert behavior, Mr. Mak never could have committed his crimes against the United States.

Moreover, the ten year sentence recommended by Mr. Mak is inconsistent with the jury's verdict, which convicted Mr. Mak on five counts with a total statutory maximum of forty-five years.  Finally, Mr. Mak's recommended sentence disregards the Guidelines, which establish an applicable sentencing range of between 235 and 293 months, and it does not achieve the sentencing objectives of § 3553.[3]

## V.    CONCLUSION

For all of the foregoing reasons, the Court sentences Mr. Mak to a custodial term of 293 months.

DATED:     March 24, 2008

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

[3] With respect to the government's request for an upward variance, the Court agrees that the factors identified by the government warrant a high end guideline sentence but disagrees that those same factors justify an upward variance beyond a high-end guideline sentence.  A sentence of 293 months is a fair and just sentence that addresses the § 3553 sentencing factors.